958 F.2d 371
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Delbert MANNING, Plaintiff-Appellant,
v.
Joseph ABRAMAJTYS, Defendant-Appellee.
 No. 91-1450.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1992.
 
 Before RALPH B. GUY, JR., ALAN E. NORRIS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Delbert Manning ("Manning), a prisoner in Michigan state prison, brought this action pursuant to 42 U.S.C. Section 1983, alleging deprivation of his constitutional right, under the First and Fourteenth Amendments to the United States Constitution and under the First Amendment and due process provisions of the Michigan Constitution, to receive an outside legal publication directly from the publisher. The district court found that no constitutional deprivation had occurred and awarded summary judgment to the defendant-appellee, Warden Joseph Abramajtys. We affirm but modify the district court's judgment to clarify that, as to the state constitutional claims only, the dismissal is without prejudice.
 
 
 2
 Jurisdiction was proper in the district court under 28 U.S.C. Section 1331. This court has jurisdiction under 28 U.S.C. Section 1291. The appeal is timely under Rule 4(a), Fed.R.App.P.
 
 I.
 
 3
 The facts are straightforward and undisputed. In early November of 1989, a legal publication, entitled "Prisoners' Self-Help Litigation Manual" and addressed to Manning, was received at Muskegon Temporary Correctional Facility ("MTF"), where Manning was a prisoner. However, the manual, which apparently had been ordered from the publisher and paid for by a friend of Manning, was rejected by prison officials for failure to comply with MTF operating procedure OP-MTF-51.02 ("51.02"). 51.02, which had been implemented at MTF pursuant to Michigan Administrative Rule R 791.6603, provided that prisoners could receive outside publications only if they were ordered through the institutionally approved vendor. Because this manual had not been ordered through the approved vendor, but directly through the publisher, Manning was not allowed to receive it.[1] After having tried, without success, to gain possession of the manual through the available MTF grievance procedures, on December 22, 1989, Manning filed this action in United States District Court for the Western District of Michigan.
 
 
 4
 In its first Opinion, filed July 17, 1990, the district court found that there were no genuine issues of material fact and granted appellee's motion for summary judgment on both the First Amendment and Fourteenth Amendment due process claims. Manning had argued that he had a First Amendment right to receive this legal manual directly from the publisher. Manning also had argued that Michigan Administrative Rule R 791.6603,[2] pursuant to which 51.02 was implemented, created a liberty interest, namely, the right to receive the legal manual, that was entitled to protection under the Due Process Clause. The district court, in rejecting both of Manning's claims, found, first, that 51.02 was valid under a First Amendment analysis because "reasonably related to legitimate penological interests," Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64, 79 (1987); and, second, that the "may" language of R 791.6603 was insufficiently mandatory to create a protectible interest under the Due Process Clause.
 
 
 5
 Following Manning's motion for reconsideration, on November 28, 1990, the district court issued a second Opinion in which the court modified its reasoning, but not the result reached, regarding Manning's due process claim. Based on a recently decided Michigan Court of Appeals decision, Spruytte v. Department of Corrections, 184 Mich.App. 423, 459 N.W.2d 52 (Mich.Ct.App.1990), the district court determined that the use of the word "may" in R 791.6603, although seemingly permissive, did, in fact, create a protectible interest. However, the district court also concluded that Manning's due process claim, like his First Amendment claim, was subject to the Turner test and that, under this test, Manning's due process rights had not been violated. Therefore, the motion for reconsideration was denied.
 
 II.
 
 6
 This case presents the issues of whether the operating procedure of the Muskegon Temporary Correctional Facility impermissibly infringed Manning's First Amendment right to receive the publication directly from the publisher and whether that policy impermissibly infringed any interest created by state law and entitled to protection under the Due Process Clause of the Fourteenth Amendment[3]. Initially, we agree with the district court's determination that, because there was no genuine issue of material fact, disposition of this case on summary judgment was proper. See FED.R.CIV.P. 56(c). We also agree with the district court that the proper standard for review of Manning's claims that 51.02 infringed his rights conferred by the First Amendment and the Due Process Clause of the Fourteenth Amendment is that set out in Turner, supra, and subsequently articulated in Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Although Abbott was a First Amendment case, the Supreme Court more recently has stated, in a case involving a prisoner due process challenge: "We made quite clear that the standard of review we adopted in Turner applies to all circumstances in which the needs of prison administration implicate constitutional rights." Washington v. Harper, 494 U.S. 210, 224, 110 S.Ct. 1028, 1038, 108 L.Ed.2d 178, 199 (1990). We address the First Amendment claim first.
 
 
 7
 Turner sets forth a four-part test for determining the validity of prison regulations which impinge on prisoners' First Amendment rights. Under Turner, the court first must determine whether the objective of the regulation at issue is legitimate and neutral and whether the regulation is rationally related to that objective. Second, the court must determine whether there are alternative means available for the prisoner to exercise the asserted constitutional right. Third, the court must determine the impact that accommodation of the alleged right would have on other inmates and guards in the prison. Fourth and finally, the court must determine whether the regulation is an exaggerated response to prison concerns, that is, whether there exists an obvious, easy alternative that would fully accommodate prisoners' rights at a de minimis cost. Turner, 482 U.S. at 89-91, 107 S.Ct. at 2262, 96 L.Ed.2d at 79-81. The Supreme Court has stated that this test is intended "to reconcile our longstanding adherence to the principle that inmates retain at least some constitutional rights despite incarceration with the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration." Harper, 494 U.S. at 223-24, 110 S.Ct. at 1038, 108 L.Ed.2d at 199.
 
 
 8
 There is no question that, under this deferential standard, 51.02 does not impermissibly infringe Manning's First Amendment rights. The purpose of 51.02 is to improve prison security, clearly a legitimate objective. 51.02 is neutral because it applies without regard to the contents of a particular publication; it is rationally related to its stated purpose because channeling incoming prisoner publications through a single vendor decreases the likelihood that contraband will escape detection. Alternate means are available to Manning, because he may either borrow a copy of the manual through the prison library or order his own copy, provided that he is able to do so through the institutionally approved vendor. If 51.02 were not in force, prison officials would have to conduct more diligent searches for contraband hidden in publications, a result which would clearly impact on other prisoners, who would have to wait longer to receive their publications because of the ensuing delays. Finally, Manning has not proposed any easy alternatives available to prison authorities that would result in only a de minimis additional expense. Thus, under Turner, the regulation does not violate Manning's First Amendment rights. See Abbott, 490 U.S. at 414-19, 109 S.Ct. at 1882-85, 104 L.Ed.2d at 473-77 (upholding as facially valid analogous federal regulations that authorize a warden to reject publications posing a threat to the security or administration of a prison).
 
 
 9
 Although the analysis is somewhat different with respect to Manning's due process claim, it is clear that 51.02 does not impermissibly infringe his Fourteenth Amendment due process rights. In Harper, supra, the Supreme Court identified three "factors" from the Turner case that were relevant to determining whether the due process rights of a prisoner had been violated: the presence of a valid, rational connection between the prison regulation and the legitimate governmental interest purportedly advanced by that regulation; the impact which accommodation of the asserted constitutional right will have on guards, inmates, and prison resources; and the absence of ready alternatives. Harper, 494 U.S. at 224-25, 110 S.Ct. at 1038, 108 L.Ed.2d at 200. Applying these factors to the present case, and for the same reasons we articulated above with regard to our First Amendment analysis, we find that 51.02 reasonably regulated any protectible interest Manning might have had in receiving outside publications.[4] See also Abbott, 490 U.S. at 473-77, 109 S.Ct. at 1882-85, 104 L.Ed.2d at 473-77; Price v. Fair, 1991 U.S.App.LEXIS 20453, at 4 n. 3 (1st Cir.1991) (applying Turner analysis to substantive due process claim based on termination of spousal visitation privileges and finding that, under Turner, this claim failed).
 
 III.
 
 10
 The district court judgment is modified only to clarify that Manning's state constitutional claims are dismissed without prejudice. Manning's federal Constitutional claims under the First Amendment and the Due Process Clause of the Fourteenth Amendment are without merit. With respect to these claims, and the Section 1983 claim based thereon, the judgment of the district court is affirmed.
 
 
 
 [1]
 Manning acknowledges that the prison library, to which he had access, contained a copy of this manual at the time he filed his Complaint
 
 
 [2]
 R 791.6603 states, in pertinent part, that "[a] prisoner may receive any book, periodical, or other publication which is sent directly by the publisher or other authorized retail outlet and which does not present a threat to the order or security of the institution...."
 
 
 [3]
 Any interest in receiving a publication arguably could be characterized as either a liberty interest or a property interest for due process purposes. Because we hold that, in either case, the regulation in question did not violate Manning's due process rights, we need not decide whether any interest in receiving such publications is a liberty or a property interest. Nor, in light of this disposition, need we decide whether, under the circumstances of the present case, such an interest was, in fact, created by Michigan law. We note, however, that the Michigan Administrative Rule R 791.6603 in effect at the time that the activity of which Manning complains occurred is an amended version of that Rule as it existed at the time of our decision in Spruytte v. Walters, 753 F.2d 498 (1985), and now contains the explicit "publishers only rule," which was absent in that case. Finally, because we find that MTF's policy of limiting prisoner access to outside publications to those publications sent through the approved vendor was constitutionally permissible, we need not address the issue of whether 51.02 was properly promulgated under the Michigan Administrative Procedure Act
 
 
 [4]
 Because Manning does not contend that he was denied the opportunity for meaningful review of the decision to reject the legal manual, we read his Complaint to allege a violation of his substantive, rather than his procedural, due process rights. Even were we to apply a procedural due process analysis, however, we would reach the same result. Manning took advantage of the grievance mechanism available at MTF. His grievance apparently was denied, and he thereafter filed this action. The review that Manning received was sufficient to comport with due process. See, e.g., Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 872, 74 L.Ed.2d 675, 689 (1982) ("informal, non-adversary review" of petitioner's allegedly improper disciplinary segregation in prison held to comport with due process requirements)